McGEE, Judge.
 

 Plaintiffs filed an amended complaint against The County ofHalifax (defendant) on 14 February 2002 alleging that the solid waste availability fee assessed by the Halifax County Commissioners was unlawful and requesting that defendant be enjoined from collecting and enforcing the assessment against plaintiffs. Plaintiffs also moved for a preliminary injunction ordering defendant to stay all collection efforts until the matter was decided. Plaintiffs' motion for a preliminary injunction was denied in an order filed 1 February 2002. Defendant filed an answer to plaintiffs' complaint on 13 March 2002 denying the allegations and requesting that the trial court dismiss the complaint pursuant to Rule 12(b)(6).
 

 The case was heard at the 27 January 2003 session of Superior Court in Halifax County. In a judgment filed 28 February 2003, the trial court declared the solid waste availability fee unlawful, enjoined defendant from collecting it, and ordered defendant to refund any solid waste availability fees plaintiffs had paid. Defendant appeals.
 

 Plaintiffs are residents or entities who own real property in Halifax County. In June 2001, the Halifax County Commissioners imposed a fifty-seven dollar solid waste availability fee (the fee) on all parcels of land in Halifax County, whether occupied or vacant. Tax bills were mailed to Halifax County residents and real property owners. A pamphlet was included with the bills explaining that defendant's plan was to use the majority of the fee to fund its general fund budget. For occupied parcels, twenty-five dollars of the fee would remain in the solid waste department and theremaining thirty-two dollars would be transferred to defendant's general fund. For unoccupied parcels, the entire fee amount would be transferred to defendant's general fund. The pamphlet also explained that "[o]wners of parcels . . . designated as a wastewater and/or wastewater repair ONLY[,]" or "[o]wners of parcels that have been evaluated . . . and determined `not suitable' to sustain a septic/wastewater system" could apply for a fee exemption. However, at a meeting on 4 September 2001, the Halifax County Commissioners, after being made aware of the provisions contained in N.C. Gen. Stat. § 153A-292, voted and approved the county manager's "recommendation to direct staff to see that no funds derived from the solid waste availability fees be used in the General Fund[.]"
 

 In a memorandum to the Halifax County Commissioners dated 5 November 2001, the interim county manager stated that the definition of "improved property" previously used by the Tax Department was "an acceptable and legal definition." The memo stated that the definition was derived from the
 
 Dictionary of Real Estate Appraisal,
 
 Second Edition and from
 
 Pamlico County v. Davis,
 

 249 N.C. 648
 
 ,
 
 107 S.E.2d 306
 
 (1959). Under that definition, improved property was defined as
 

 any land parcel for which its value or utility has been enhanced by the construction of improvements; prepared for cultivation; clearing and; ditching of farmland or; prepared for development by grading, draining, installing utilities, etc. as distinguished from land on which no improvements have been made.
 

 This definition is broader than the definition in § 54-26 of theHalifax County Code, which provides that improved property includes "all real property within Halifax County, excluding the incorporated municipalities, upon which is located a residence, mobile home, apartment, multi-family structure, or other place of living, whether permanent or temporary (occupied or unoccupied)." During the fiscal year 2001-2002, the fee imposed actually generated $1,933,133.00 in revenue. The cost of operating the solid waste facilities is disputed. According to defendant, the cost of operating the disposal facilities during the year 2001-2002 was $1,884,775.00. However, plaintiffs assert in their brief that the only figures in evidence showed that the estimated cost of operating the facilities and the landfill was $799,992.00. The trial court agreed with defendant and found the operating cost to be $1,884,775.00. We note that it is irrelevant which figure represents the accurate amount of the operating costs. Instead, what is important is that both cost figures, $1,884,775.00 and $799,992.00, are less than the amount of revenue generated by the fee, $1,933,133.00.
 

 "A trial court's findings of fact in a bench trial have the force of a jury verdict and are conclusive on appeal if there is evidence to support them. However, the trial court's conclusions of law are reviewable
 
 de novo.
 
 "
 
 Browning v. Helff,
 

 136 N.C. App. 420
 
 , 423,
 
 524 S.E.2d 95
 
 , 98 (2000) (citations omitted).
 

 Defendant argues in assignment of error number four that the trial court erred in concluding that defendant violated N.C. Gen. Stat. § 153A-292 by imposing the solid waste availability fee. Within this argument, defendant makes multiple points, including the following: (1) that local acts and ordinances enacted pursuant to Chapter 153A should be broadly construed; (2) that the intention of defendant is irrelevant to the determination of whether the fee is valid; (3) that no fee revenue was transferred to the general fund; and (4) that both the projected revenue and the actual revenue from the fee were reasonably related to the cost of the solid waste facilities.
 

 N.C. Gen. Stat. § 153A-292(b) (2003), the statute at issue in this case, provides that
 

 [t]he board of county commissioners may impose a fee for the availability of a disposal facility provided by the county. A fee for availability
 
 may not exceed
 
 the cost of providing the facility and may be imposed on all improved property in the county that benefits from the availability of the facility (emphasis added).
 

 It is not disputed that defendant has the authority to assess a fee for the availability of solid waste facilities. Rather, the dispute is whether defendant assessed the fee in compliance with N.C. Gen. Stat. § 153A-292. This statute also provides that county commissioners may impose fees for the collection of solid waste and for the use of disposal facilities. However, these fees may not exceed the costs of collection or exceed the cost of operating the facilities. N.C. Gen. Stat. § 153A-292(b).
 

 Defendant cites N.C. Gen. Stat. § 153A-4 (2003) which states that the provisions of Chapter 153A and local acts "shall be broadly construed and grants of power shall be construed to include any powers that are reasonably expedient to the exercise of thepower." However, "[t]he principles governing statutory construction are well established: where the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must construe a statute using its plain meaning."
 
 Gannett Pacific Corp. v. State Bureau,
 
 ___ N.C. App. ___, ___,
 
 595 S.E.2d 162
 
 , 165 (2004).
 

 In the case before our Court, N.C. Gen. Stat. § 153A-292(b) clearly and unambiguously provides that a solid waste availability fee "may not exceed the cost of providing the facility[.]" Here, the fifty-seven dollar fee generated $1,933,133.00. This amount exceeded the cost of providing the facilities in violation of the statute.
 

 Defendant cites
 
 Barnhill Sanitation Service v. Gaston County,
 

 87 N.C. App. 532
 
 ,
 
 362 S.E.2d 161
 
 (1987),
 
 disc. review denied,
 

 321 N.C. 742
 
 ,
 
 366 S.E.2d 856
 
 (1988), which addressed the validity of a county ordinance that authorized charging landfill use fees to commercial, industrial, and municipal haulers. In
 
 Barnhill Sanitation Service,
 
 regarding N.C. Gen. Stat. § 153A-277(a), the statute authorizing such fees, this Court stated that "`[u]nder this broad, unfettered grant of authority, the setting of such [fees] is a matter for the judgment and discretion of [county] authorities, not to be invalidated by the courts absent some showing of arbitrary or discriminatory action.'"
 
 Barnhill Sanitation Service,
 

 87 N.C. App. at 537-38
 
 ,
 
 362 S.E.2d at 165
 
 (quoting
 
 Town of Spring Hope v. Bissette,
 

 53 N.C. App. 210
 
 , 212-13,
 
 280 S.E.2d 490
 
 , 492 (1981),
 
 aff'd,
 

 305 N.C. 248
 
 ,
 
 287 S.E.2d 851
 
 (1982)). However, the statute which this Court was describing in
 
 Barnhill
 
 provided counties with a great deal of flexibility in setting the fees. In relevant part, the statute provided that counties had the authority to "`establish and revise from time to time . . . fees . . .
 
 for the use of
 
 or the services furnished by
 
 a public enterprise.
 
 . . . [F]ees . . . may vary for the same class of service in different areas of the county and
 
 may vary according to classes of service
 
 [.]'"
 
 Barnhill Sanitation Service,
 

 87 N.C. App. at 537
 
 ,
 
 362 S.E.2d at 165
 
 (quoting N.C. Gen. Stat. § 153A-277(a)). Unlike the statute at issue in the case before us, N.C. Gen. Stat. § 153A-277(a) provided that the fees could vary based on different factors. In contrast, the statue at issue here, N.C. Gen. Stat. § 153A-292(b), plainly states that fees charged for providing the facilities cannot exceed the cost of providing those facilities.
 

 We find
 
 Smith Chapel Baptist Church v. City of Durham,
 

 350 N.C. 805
 
 ,
 
 517 S.E.2d 874
 
 (1999) instructive to the case before our Court. In
 
 Smith Chapel Baptist Church,
 
 the North Carolina Supreme Court interpreted the language of a statute which allowed municipalities to impose fees to finance the construction and operation of storm drainage systems. The statute specifically provided that "`[r]ates, fees, and charges imposed under this subsection
 
 may not exceed the city's cost
 
 of providing a
 
 stormwater
 
 and
 
 drainage system.
 
 '"
 
 Smith Chapel Baptist Church,
 

 350 N.C. at 811
 
 ,
 
 517 S.E.2d at 878
 
 (quoting N.C. Gen. Stat. § 160A-314(a), (a1), para. 2 (Supp. 1998)). Our Supreme Court utilized the plainmeaning rule and stated that
 

 t]his statutory provision clearly and unambiguously mandates that the City may not exceed the cost of providing a stormwater and drainage system. Thus, under a plain reading of the statute, SWU fees are limited to the amount which is necessary for the City to maintain the stormwater and drainage system rather than the amount required to maintain a comprehensive SWQMP to meet the requirements of the WQA.
 

 Smith Chapel Baptist Church,
 

 350 N.C. at 811
 
 ,
 
 517 S.E.2d at 879
 
 . The Court ultimately held that the city's ordinance "went well beyond the scope of [statutory] authority . . . to construct and operate a structural and natural stormwater and drainage system[.]"
 
 Id.
 
 at 815,
 
 517 S.E.2d at 881
 
 . The Court further held that the fees the city imposed "far exceed[ed] the cost of providing a structural and natural stormwater and drainage system . . . as contemplated by the General Assembly."
 

 Id.
 

 Accordingly, the Court held that the ordinance and the fees thereunder were invalid as a matter of law.
 

 Id.
 

 In the case before our Court, defendant violated the explicit mandate of N.C. Gen. Stat. § 153A-292(b) that the cost of providing the facilities not exceed the fees collected to fund the facility. In fact, defendant concedes that the fee revenue exceeded the cost of providing the facilities. Nonetheless, defendant argues that "it would be unreasonable to expect a county to pinpoint [its] costs and revenues exactly, one year in advance." However, we find this argument unpersuasive and follow the reasoning in
 
 Smith Chapel Baptist Church
 
 in holding that because defendant's actions exceeded the statutory authority, the trial court did not err in concludingthat the solid waste assessment fee was unlawful. The phrase "may not exceed" in N.C. Gen. Stat. § 153A-292(b) does not mean that fees and costs need only be "reasonably related" to one another as defendant contends.
 

 Because we find that defendant violated the statute by charging more for the facilities than it cost to provide the facilities, we need not address the other points raised by defendant within this first argument. Our analysis would not be affected by discussing whether defendant's intent is relevant or whether any money was actually transferred from the solid waste fund to the general fund. The fact that the fee revenue exceeded the cost of providing the facilities is an adequate basis for finding the fee unlawful. Accordingly, the trial court did not err. Defendant's assignment of error number four is overruled.
 

 Defendant next argues in assignment of error number five that because no revenue from the fee was transferred to defendant's general fund, the trial court erred in finding that the fee was unlawful. However, as stated above, it is irrelevant whether or not revenue from the fee was transferred. Based on the plain meaning of N.C. Gen. Stat. § 153A-292(b), the fact that the fee generated more revenue than required to provide the facilities is an adequate basis for the trial court to have found the fee unlawful. Accordingly, we do not address this argument.
 

 Defendant next argues that plaintiffs lack standing to challenge the transfer of solid waste assessment fees to the general fund. Plaintiffs point out in their brief that defendantfailed to properly assign error to this issue. Under N.C.R. App. P. 10(a), this Court's scope of review on appeal is limited to consideration of those assignments of error properly set forth in the record on appeal. An assignment of error should direct the Court's attention to the particular error about which the argument is made. N.C.R. App. P. 10(c)(1). In the case before this Court, no assignment of error corresponds with the argument presented by defendant regarding plaintiff's alleged lack of standing. Accordingly, this argument is not properly before this Court for consideration and we do not review it.
 
 See State v. Fluker,
 

 139 N.C. App. 768
 
 , 776-77,
 
 535 S.E.2d 68
 
 , 74 (2000);
 
 State v. Thomas,
 

 332 N.C. 544
 
 , 553-54,
 
 423 S.E.2d 75
 
 , 80 (1992),
 
 overruled on other grounds by State v. Richmond,
 

 347 N.C. 412
 
 ,
 
 495 S.E.2d 677
 
 ,
 
 cert. denied,
 

 525 U.S. 843
 
 ,
 
 142 L. Ed. 2d 88
 
 (1998).
 

 Defendant next argues that the trial court erred in concluding that the fee was imposed on all property without regard to whether the property was improved or whether it benefitted from the availability of the facility. Again, there is no assignment of error that corresponds with this specific argument. However, within the text of the argument, defendant actually alludes to assignments of error numbers one, two, and three which deal with the definition of "improved property" that defendant used. Defendant essentially argues that the definition it used was reasonable and that it is irrelevant that a definition of "improved property" already existed in the county code. Defendant asserts that "because arbitrary or discriminatory action in the adoption ofthe definition of `improved property' by county officials cannot be shown, the trial court erred by invalidating the [solid waste availability] fee." However, as explained above, the fact that the fee revenue exceeded the cost of providing the facilities is an adequate basis, standing alone, to invalidate the fee. Accordingly, we need not discuss whether the appropriate definition of "improved property" was used in determining which parcels would be assessed the fee.
 

 Defendant last argues in assignment of error number six that the trial court erred in taxing costs to defendant. Defendant notes that it "does not assign error to the taxing of costs as a separate issue." However, defendant simply asks that if our Court finds that the trial court erred in ruling in favor of plaintiffs, then our Court should also reverse the portion of the judgment taxing costs to defendant. In light of the fact that we have affirmed the trial court, we likewise affirm the taxing of costs to defendant.
 

 Affirmed.
 

 Judges TIMMONS-GOODSON and TYSON concur.
 

 Report per Rule 30(e).